## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| James LoVerde, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE TELEPHONE CONSUMER PROTECTION ACT, THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT AND OTHER EQUITABLE RELIEF** |
| Aldous & Associates, PLLC, | |
| Defendant. | |
| | **JURY TRIAL DEMANDED** |

### PARTIES

1.  Plaintiff, James LoVerde ("James"), is a natural person who resided in Chicago, Illinois, at all times relevant to this action.

2.  Defendant, Aldous & Associates, PLLC ("Aldous"), is a Utah professional limited liability company that maintained its principal place of business in Holladay, Utah, at all times relevant to this action.

### JURISDICTION AND VENUE

3.  Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4.  Pursuant to 28 U.S.C. §1367(a), the Court also has Supplemental Jurisdiction over Plaintiff's claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"),

1

815 ILCS 505/1 *et seq.,* because they share a common nucleus of operative fact with Plaintiff's claims under the FDCPA.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## ARTICLE III STANDING

6. Plaintiff has Article III standing to bring his FDCPA claim against Defendant because Defendant's communications in an effort to collect an alleged debt constitute an unwanted intrusion upon his solitude, seclusion, and peace and quiet, which are common law analogues to the FDCPA violations asserted below. See Vazzano v. Receivable Mgmt. Servs., LLC, 621 F. Supp. 3d 700, 709 (N.D. Tex. 2022) (receiving an unwanted letter "has a 'close relationship' to the type of harm protected by the common law tort of intrusion upon seclusion (protecting against intrusion into private solitude)") (citing TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2204 (2021); Gadelhak v. AT&T Servs., Inc., 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.)) (holding that "[t]he harm posed by unwanted text messages is analogous to that type of intrusive invasion of privacy."

7. Defendant's collection efforts with respect to the alleged debt caused Plaintiff to suffer concrete and particularized harm, inter alia, because the FDCPA provides Plaintiff with the legally protected right not to be misled about the legal status of a debt or treated unfairly with respect to any action for the collection of any consumer debt.

8. Moreover, the emotional distress Plaintiff experienced is a sufficient concrete injury to establish Article III standing. See *Mayfield v. LTD Fin. Servs., L.P.*, No. 4:20-CV-01966, 2021 WL 4481089, at *4 (S.D. Tex. Sept. 30, 2021) (citing *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 169 (5th Cir. 2016) ("[E]motional harm satisfies the 'injury in fact'

2

requirement of constitutional standing.")) (additional internal quotation marks omitted); <u>see</u> <u>also</u> *Smith v. Moss Law Firm, P.C.*, No. 18-2449, 2020 WL 584617, at \*5 (N.D. Tex. Feb. 6, 2020) ("legal costs, anxiety, and worry" caused by defendant's alleged FDCPA violation were concrete and particularized injuries for purposes of FDCPA claim).

9.  Defendant's attempts to collect an alleged debt from Plaintiff after receiving notice of his refusal to pay are the type of harassment and invasions of privacy that Congress sought to protect by enacting FDCPA.

10. Defendant's communications to collect an alleged debt from a consumer who refuses to pay "disadvantages other debt collectors," who properly follow FDCPA. 15 U.S. Code § 1692(e) (Congressional findings and declaration of purpose).

### STATEMENT OF FACTS

11. At all times relevant to this action, Aldous collected consumer debts.

12. Aldous regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

13. Aldous is a "debt collector" that regularly collects consumer debts as defined by 15 U.S.C. § 1692a(6).

14. At all relevant times, Aldous was engaged in "trade" and "commerce" as defined by 815 ILCS 505/1(f).

15. As described, *infra*, Aldous contacted James to collect a debt that was incurred primarily for personal, family, or household purposes.

16. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

17. James is a "consumer" as defined by 15 U.S.C. § 1692a(3).

18. On or around May 29, 2024, Aldous sent James a letter in an attempt to collect an alleged debt. *See* Exhibit A

19. In response, on June 5, 2024, James mailed a letter via certified mail (hereinafter referred to as the "Response Letter") to Aldous expressly limiting the communication channels that Aldous was permitted to use. *See* Exhibit B

20. In the Response Letter, James requested validation of the alleged debt and instructed Aldous that "no telephone contact be made by your offices" and that "[a]ll future communications with me MUST be done in writing and sent to the address noted in this letter." *See* Exhibit B

21. Tracking confirmation shows Aldous received the Response Letter on June 10, 2024. *See* Exhibit C

22. This letter clearly revoked consent that any future communications, especially automated communications, were unwelcome, unwanted and that James revoked any and all prior express consent for Aldous to communicate with James.

23. Despite receiving James' clear Response Letter and explicit revocation of any prior consent to be contacted, Aldous continued to place calls to James. On **June 24, 2024**, Aldous contacted James using a **pre-recorded voice** message and left a voicemail, violating both James' instruction to cease telephone communications and the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b)(1)(A). The use of a pre-recorded voice after receiving express revocation of consent directly violates the TCPA's restrictions on such communications.

24. Despite being fully aware of James' explicit refusal to be contacted via pre-recorded or automated communications, Aldous repeatedly used a **pre-recorded voice** in subsequent voicemails. These actions were in direct violation of the TCPA, which prohibits the use of

4

automated or pre-recorded voice messages without prior express consent, or after such consent had been revoked, and further violated the Fair Debt Collection Practices Act (FDCPA) by continuing to harass James with unlawful communications.

25. Aldous' conduct, as outlined above, constitutes willful and repeated violations of both federal and state laws. Aldous' actions demonstrate a blatant disregard for James' rights under the TCPA and FDCPA, as they continued their collection efforts without regard to the clear legal restrictions governing their conduct.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

26. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 25 above as if fully set forth herein.

27. Defendant violated 15 U.S.C. § 1692c(c) by communicating with Plaintiff with respect to the debt notwithstanding its receipt of written instructions to cease communications with Plaintiff.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

28. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 25 above as if fully set forth herein.

29. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

30. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

31. The likely effect of Defendant's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Plaintiff.

32. Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

33. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 25 above as if fully set forth herein.

34. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FOUR

### Violation of the Fair Debt Collection Practices Act

35. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 25 above as if fully set forth herein.

36. Defendant violated 15 U.S.C. § 1692g by continuing its efforts to collect the debt without first validating the debt pursuant to Plaintiff's written request.

## COUNT FIVE

### Violation of the Telephone Consumer Protection Act

37. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 25 above as if fully set forth herein.

38. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

137 Cong. Rec. 30,821 (1991).

39. The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity...(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

40. The TCPA provides, in part:

> (b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—
>
> > (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
> >
> > > (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
> > >
> > > * * *
> > >
> > > > (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call...

47 U.S.C. §§ 227(b)(1)(A)(iii).

41. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, pp 40-41, ¶¶ 72-73.

42. Plaintiff was the "called party" in each telephone call Defendant placed to a Plaintiff's cellular telephone.

43. Defendant violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an artificial or prerecorded voice to call Plaintiff on his cellular telephone without Plaintiff's prior express consent or after such consent had been revoked.

44. In addition, The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

45. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

46. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc*. 2015 U.S. Dist. LEXIS 44930, *31 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310, *21-22 (N.D. Ill. Mar. 19, 2013); *Steward v. Regent Asset Mgmt. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 50046, *18-20 (N.D. Ga. 2011).

8

47. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 U.S. Dist. LEXIS, at \*21-22; see also *Roylance*, 2015 U.S. Dist. LEXIS, at \*31 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

48. Defendant voluntarily placed telephone calls to Plaintiff's cellular telephone number using an ATDS and/or an artificial or prerecorded voice.

49. Defendant's violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made.

## COUNT SIX

### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act

50. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 25.

51. The ICFA states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

52. Defendant violated 815 ILCS 505/2 through the unfair and deceptive nature of its conduct in relation to Plaintiff.

53. The ICFA was designed to protect consumers, such as Plaintiff, from the exact behavior committed by Defendant.

54. The ICFA further states:

> "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic

damages or any other relief which the court deems proper." 815
ILCS 505/10a.

55. Plaintiff has suffered significant actual damages resulting from Defendant's unlawful practices, including both out of pocket expenses, as well as emotional pain and suffering.

56. As a result of Defendant's unfair and deceptive practices, Plaintiff suffered actual damages, including but not limited to emotional distress, frustration, and inconvenience.

## JURY DEMAND

57. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

58. Plaintiff prays for the following relief:

    a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. Judgment against Defendant for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call Defendant made in violation of the TCPA.

    c. Judgment against Defendant for actual and punitive damages as provided under 815 ILCS 505/10a(a).

    d. Judgment against Defendant for costs and reasonable attorney fees as provided under 815 ILCS 505/10a(c).

    e. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date: October 14, 2024

By: /s/ Jeffrey S. Hyslip
Jeffrey S. Hyslip, Esq.
Hyslip Legal, LLC
207 S. Harrison Street, Suite A
Algonquin, IL 60102
Phone: 614-362-3322
Email: jeffrey@hysliplegal.com

*Attorney for Plaintiff*

11